THE CITIZENS BANK OF BATESVILLE,
ARKANSAS *v.* ESTATE OF Mae PETTYJOHN

83-299                                        667 S.W.2d 657

Supreme Court of Arkansas
Opinion delivered April 16, 1984

*Highsmith, Gregg, Hart, Farris & Rutledge,* by: *John C. Gregg,* for appellant.

*Boyette, Morgan & Millar, P.A.* by: *Mike Millar,* for appellee

*Steve Clark,* Atty. Gen., by: *Jeffrey A. Bell,* Asst. Atty.

Gen.; *Dennis Shackleford,* President, Arkansas Bar Association; *Robert A. Leflar;* and *Hulen & Cuffman,* by: *Mike Hulen,* for Arkansas Bar Association, *amicus curiae.*

JOHN I. PURTLE, Justice. The trial court awarded a certificate of deposit to the survivor. The certificate was made payable to either or both of two individuals and payable on death to the survivor. The decedent's estate appealed to the court of appeals which reversed the trial court and awarded the certificate to the estate. We granted certiorari to review primarily because the authority of the court of appeals to sit in division and reverse a case by three votes to sit in division and reverse a case by three votes was challenged. We hold that the court of appeals may reverse a case by three votes while sitting in division and that the court of appeals correctly decided the question of the ownership of the certificate of deposit.

On August 3, 1978, Mae Pettyjohn withdrew the sum of $14,000 from a joint checking account which she shared with Jimmie Lynn Ballard. The signature card on the account, which was in the Citizens Bank, was signed by both parties. The money withdrawn was used to purchase certificate of deposit number 6172, made payable to Mae Pettyjohn or Jimmie Lynn Ballard. When certificate number 6172 matured, the decedent renewed it in the same amount ($14,000) as originally invested. The new certificate was numbered 9573. A "Depositors Notice of Penalty for Payment of Time Deposits Before Maturity," printed on a separate piece of paper, was presented to decedent and she signed it. However nothing in it indicated the certificate was jointly owned with Jimmie Lynn Ballard.

After the decedent's death, her estate and the survivor named on the certificate of deposit each claimed the certificate. The trial court found the decedent had substantially complied with the provisions of Ark. Stat. Ann. § 67-552 (Repl. 1980), which require a designation in writing of the depositor's intent to create a joint tenancy. The court of appeals found there had been no substantial compliance with the statute.

# ERRATA

*282 ARKANSAS REPORTS at page 224*

Detach at perforation, moisten the back, and paste over the last five lines of the first full paragraph of the majority opinion on page 244 of *Cit. Bank of Batesville v. Estate of Pettyjohn:*

votes was challenged. We hold that the court of appeals may reverse a case by three votes while sitting in division and that the court of appeals correctly decided the question of the owner-ship of the certificate of deposit.

In the recent case of *Walker* v. *Hooker*, 282 Ark. 61, 667 S.W.2d 637 (1984) we reviewed many of our prior cases on this subject. In *Walker* we held that the signature of the purchaser upon a copy of a certificate was a sufficient designation in a separate writing. In *Morton* v. *McComb*, 281 Ark. 125, 662 S.W.2d 471 (1983), we held that a typed statement on a signature card was sufficient to comply with the designation in writing requirement. In *Morton* we stated that, "Where there is more than one person designated, they hold as joint tenants with right of survivorship."

In the present case the decedent and the survivor established a joint checking account which was payable to the survivor. The signature card was signed by both parties. The decedent then withdrew $14,000 from the checking account and purchased a certificate of deposit in both names with a P.O.D. clause. This certificate contained a notice to depositors on the back of the certificate and this notice was signed by the decedent. She also signed a separate notice at the time she renewed the certificate. These funds were handled three times, and each time both names were used. However, the decedent never signed any paper acknowledging joint ownership.

We are of the opinion that the previous designation in writing in this case does not comply with prior decisions and the statute which has now been amended by the legislature. The court of appeals was correct in holding the designation in writing requirement was not complied with.

Appellant challenges the authority of the Arkansas Court of Appeals to sit in divisions. It is further argued that appellant's right to due process is violated by a decision of three judges voting to reverse the decision of the trial court. The argument is that three members of the six member court cannot reverse a trial court because the decision would not be by a majority of the six member court. Appellant contends that when only three members of the court vote to reverse the case should be affirmed. Normally a tie vote of the court of appeals results in affirmance. *Hegg.* v. *Dickens*, 7 Ark. App. 139, 644 S.W.2d 632 (1983). However, when the court sits in

divisions of three, a unanimous vote will either reverse or affirm.

Amendment 58 to the Constitution of Arkansas was adopted in 1978. The Amendment empowered the General Assembly to create and establish a court of appeals and divisions thereof. By Act 208 of 1979 (Ark. Stat. Ann. §§ 22-1201 — 22-1208 [Supp. 1983]) the legislature created a court of appeals and established six judges for the court. The court sat en banc until Act 410 of 1983 (Ark. Stat. Ann. §§ 22-1209 — 22-1212 [Supp. 1983]) became effective, when the court commenced sitting in two divisions.

We need not consider whether the Constitution is a grant or a limitation of power in the General Assembly because Amendment 58 to the Arkansas Constitution of 1874 specifically confers authority for the General Assembly to establish a court of appeals and divisions of the court. In futherance of the authority granted by Amendment 58, the legislature saw fit to authorize the court of appeals to establish two divisions. The language could not be more clear than where the Amendment states: "The General Assembly is hereby empowered to create and establish a Court of Appeals and divisions thereof . . ." All reasonable doubt must be resolved in favor of the constitutionality of a statute. *Poole* v. *State*, 244 Ark. 1222, 428 S.W.2d 628 (1968). The burden of proving a statute to be unconstitutional is upon the party challenging it. *Handy Dan Imp. Center Inc.* v. *Adams*, 276 Ark. 268, 633 S.W.2d 699 (1982). We must give the words of a statute their usual and ordinary meaning. We cannot give a statute any other meaning if it is unambiguous. *Mears, County Judge* v. *Ark. State Hospital*, 265 Ark. 844, 581 S.W.2d 339 (1979).

This court sat in division as provided for by Amendment 9 to the Arkansas Constitution and by Act 205 of 1925 (Ark. Stat. Ann. §§ 22-206 — 22-208 [Repl. 1962]). We required four votes, a majority of this court, to reverse a case. However, that has no relevance to the present case other than the fact that both courts were divided into division pursuant to constitutional amendments and acts of the General Assembly. Provisions of Act 410 of 1983 (Ark. Stat. Ann. §§ 22-1210 — 22-1211) provide that the court of appeals shall

sit in divisions of three and that if all three judges do not agree the case will be submitted to the full court. The plain wording of Amendment 58 authorizes such action by the General Assembly.

We hold that Act 410 of 1983, authorizing the court of appeals to sit in divisions of three and authorizing either division to affirm or reverse a case by a unanimous decision, is a valid exercise of legislative authority as contemplated by Amendment 58.

The case is remanded to the trial court with directions to award the certificate of deposit to the estate of Mae Pettyjohn.