Melinda R. HAMILTON, et al.
*v.* Virginia D. HAMILTON, et al.

94-55                                            879 S.W.2d 416

Supreme Court of Arkansas
Opinion delivered July 11, 1994

*Sloan, Rubens & Peeples*, by: *Kent J. Rubens* and *James A. Davis, Jr.*, for appellant.

*Hardin, Jesson, Dawson & Terry*, by: *P.H. Hardin*, for appellee.

ROBERT L. BROWN, Justice. This case challenges the right of the surviving spouse, appellee Virginia D. Hamilton, to take against her deceased husband's will. On January 22, 1992, Barrett Hamilton died. He and Virginia Hamilton had been married since 1981. They had separated in May 1990, and Barrett Hamilton had filed for absolute divorce on August 17, 1990. At the time of his death, Barrett Hamilton had two adult daughters by a previous marriage. They are the appellants in this case, Melinda R. Hamilton and Maron M. Hamilton.

Under his will, Barrett Hamilton provided for his wife as follows:

> (c) I give and bequeath to my Wife, VIRGINIA DAL-TON HAMILTON, if she survives me, and as along as she shall remain my lawful wife but not longer, all distributions, benefits, and allowances from my real and personal property, to which she is entitled from my estate as her dower interest under Arkansas law.

The residuary clause in the will left the remainder of all property to his two daughters.

On February 21, 1992, Virginia Hamilton renounced her rights under the will and filed her election to take her share against the will of her husband under Ark. Code Ann. § 28-39-401 (1987). On January 8, 1993, Melinda and Maron Hamilton filed a motion to declare § 28-39-401 unconstitutional on its face and as applied because the statute violates the Equal Protection and Due Process Clauses of both the federal and state constitutions. The motion further urged that with respect to the decedent and Virginia Hamilton, the probate court "treat the parties as divorced." On August 5, 1993, the probate court found that the elective share statute was constitutional and that Virginia Hamilton was entitled to take against the will.

## A. STANDING

■■ Though standing of the daughters to file their motion was not raised by Virginia Hamilton, we raise the issue on our own. *See McDonald's Corp.* v. *Hawkins*, 315 Ark. 487, 868 S.W.2d 78 (1994). A party has standing to challenge the validity of a statute if that party has suffered injury or belongs to a

class which is prejudiced by the law. *Medlock* v. *Fort Smith Serv. Fin. Corp.*, 304 Ark. 652, 803 S.W.2d 930 (1991). In this vein, we have held that when a "best friend" who was a devisee and beneficiary of the testator under the will stood to lose financially after the surviving spouse elected to take against the will, that friend had standing to challenge the constitutionality of the election statutes. *See Huffman* v. *Dawkins*, 273 Ark. 520, 622 S.W.2d 159 (1981). The test for standing under *Huffman*, which had facts comparable to those in the case before us, was whether the party contesting the election would lose financially if the election took effect.

■ The question presented is whether the Hamilton daughters would stand to lose financially because of the widow's election. Virginia Hamilton was left her dower interest under the will. However, under the election statute, § 28-39-401(b)(1), the widow is entitled to homestead rights and statutory allowances in addition to dower:

> (1) The surviving spouse, if a woman, shall receive dower in the deceased husband's real estate and personal property as if he had died intestate, which dower shall be additional to her homestead rights and statutory allowances;

Thus, the surviving spouse would realize more by taking her elective share in this instance than under the will where her distribution is limited to her dower interest, and the daughters' shares in the residuary estate would, accordingly, be reduced by the election. Because this is the case, the daughters do have a financial interest which is diminished by the election, and standing to file their motion exists.

## B. CONSTITUTIONAL ARGUMENTS

■ We turn next to the constitutional arguments raised by the two Hamilton daughters. We presume that a state statute is constitutional, which places the burden on the daughters as the challenging parties to demonstrate otherwise. *Citizens Bank* v. *Estate of PettyJohn*, 282 Ark. 222, 667 S.W.2d 657 (1984). All doubts pertaining to a statute in question are resolved in favor of constitutionality. *Arnold* v. *Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). Where a constitutional construction is possible, we are compelled to uphold the validity of the statute under attack. *Id.*

■■ In determining whether a statute violates equal protection dictates, we consider several factors: (1) the character of the classification; (2) the individual interests asserted in support of the classification; and (3) the governmental interests asserted in support of the classification. *Arnold* v. *Kemp, supra; In the Matter of the Estate of Epperson*, 284 Ark. 35, 679 S.W.2d 792 (1984). The Equal Protection Clause does not preclude all statutory classifications. *Urrey Ceramic Tile Co.* v. *Mosley*, 304 Ark. 711, 805 S.W.2d 54 (1991). Indeed, statutory classifications which have a rational basis and are reasonably related to the purpose of the statute are permissible. *Id.*

■■ We engage in the following exercise in assessing whether a rational basis for a classification in our statutes exists:

> On an equal protection challenge to a statute, it is not our role to discover the actual basis for the legislation. Instead we are merely to consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose. *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Further, the party challenging the legislation has the burden of proving that the act is not rationally related to achieving *any* legitimate objective of state government under any reasonably conceivable state of facts. *Streight*, 280 Ark. at 214.

*Arkansas Hosp. Ass'n* v. *Arkansas State Bd. Pharmacy*, 297 Ark. 454, 456, 763 S.W.2d 73, 74 (1989).

The daughters advance the policy argument that the concept of an election statute for the economic protection of surviving spouses is outmoded. Moreover, they continue, the elective share concept runs counter to the testator's intent and is unfair to the beneficiaries under the will. They further highlight the disparate treatment in our statutes between divorced spouses with division of property under Ark. Code Ann. § 9-12-315 (Repl. 1993) and surviving spouses with their elective share rights under § 28-39-401. They assert that both classifications of spouses are similarly situated because regardless of the cause — divorce or

death — the result is a termination of the marriage. Accordingly, they should be treated the same. In the case at hand, the daughters point out that Virginia Hamilton stands to gain much more by taking her elective share than she would under our divorce laws because, as the subsequent wife, her contribution to the property in Barrett Hamilton's estate was minimal.

■      This reasoning, though, is flawed. The policy consideration behind the statutory division of property as part and parcel of a divorce is not the same as the policy consideration giving rise to the elective share statute. The former policy deals with the dissolution of the marriage contract and the division of property. The latter is designed to prevent injustices when a marriage endures until the death of the husband or the wife. We easily discern a rational basis behind the General Assembly's distinct handling of the two classes of spouses. Furthermore, any effort to amend the treatment afforded to the two groups is more appropriately addressed to the General Assembly. In sum, we decline to strike down § 9-12-315 as violative of the Equal Protection Clause, either facially or as applied. *See In the Matter of Patrick*, 402 S.E.2d 664 (S.C. 1991) (providing for surviving spouses is a legitimate legislative purpose and salvages the elective share statute from an equal protection attack).

■      Nor do we view the fact that Barrett Hamilton and Virginia Hamilton were estranged at the time of his death and that a divorce action was pending as altering our conclusion in this matter. Hamilton's death had the effect of terminating the divorce action. *Childress* v. *McManus*, 282 Ark. 255, 668 S.W.2d 9 (1984); *Pendergist* v. *Pendergist*, 267 Ark. 1114, 593 S.W.2d 502 (Ark. App. 1980). Hence, the parties were still married under our laws when Hamilton died. His widow's election to take against his will was appropriate, the pending divorce action notwithstanding. *See In the Matter of the Estate of Kueber*, 390 N.W.2d 22 (Minn. App. 1986) (estranged wife who was never divorced from testator entitled to her elective share).

■      The daughters also assert that Virginia Hamilton's elective share amounts to a taking of their property without compensation under the Due Process Clause of the state and federal constitutions. This court has recognized that the surviving spouse's right to an elective share is inviolate. *See Gregory* v. *Estate of*

*H.T. Gregory*, 315 Ark. 187, 866 S.W.2d 379 (1993). This is true despite our acknowledgment that a spouse's decision to elect to take against the will at times rebuffs the testator's testamentary wishes. *Id.* The elective share provisions are designed to strike a balance between a testator's right to control the distribution of his or her property for life, while preserving the State's interest in protecting the surviving spouse. *See Holland* v. *Willis*, 293 Ark. 518, 739 S.W.2d 529 (1987); *Estate of Dahlmann* v. *Estate of Dahlmann*, 282 Ark. 296, 668 S.W.2d 520 (1984). As in the case of the classification discussed above, a legitimate government interest supports the diminishment in the daughters' shares caused by the widow's election.

Affirmed.