The Honorable Ray Stalnaker State Representative 11714 Arch Street Pike Little Rock, Arkansas 72206
Dear Representative Stalnaker:
This letter is a response to your request for an opinion regarding Act 1298 of 1995.
Section 7 of Act 1298 of 1995 sets forth two different notice requirements for mechanics' and materialmen's lienholders. The notice required by the portion of the act that amends A.C.A. § 18-44-115(c) is the more detailed of the two types of required notice. This more detailed notice is required to be given only to owners of residential property consisting of fewer than four units. The other, less detailed notice is set forth in the portion of the act that amends A.C.A. §18-44-115(e)(2). That section requires that potential mechanics' and materialmen's lienholders give commercial property owners notice of their potential liens "before seventy-five (75) days have elapsed from the time that the labor was supplied or the material furnished." In setting forth this less detailed notice requirement, the act makes reference to "commercial real estate." However, the act does not define the phrase "commercial real estate" or otherwise specify the types of property that are to be considered to constitute "commercial real estate."
You have presented the following specific questions:
 (1) When do the 75 days referenced in Section 7 of the Act [which amended A.C.A. § 18-44-115(e)(2)] begin to run?
 (2) Does the notice required under Section 7 of the act [which amended A.C.A. § 18-44-115(e)(2)] apply only to commercial builders, or does it also apply to builders of residential property consisting of more than four units?
In response to your first question, it is my opinion that the 75 days referenced in Section 7 of the act [which amended A.C.A. §18-44-115(e)(2)] begin to run as soon as the aspiring lienholder is entitled to be paid pursuant to the contract for his services or material.[1] I base this conclusion upon the provisions of Section 7 that describe the information that must be contained in the notice. This information is set forth in the portion of Section 7 that amends A.C.A. § 18-44-115(e)(2). One of the items of information that must be included in the notice is "[a] general description of the labor, service, or material furnished, and the amount due and unpaid." It would be impossible to state an amount due and unpaid prior to the aspiring lienholder's entitlement to payment under his contract. Because this information must be included in the notice, I conclude that the 75 days begins to run as soon as the aspiring lienholder is entitled to be paid under his contract.
In response to your second question, it is my opinion that the notice required under § 115(e)(2) (i.e., the less detailed notice) applies to builders of residential property consisting of more than four units, as well as to builders of property that is traditionally understood to be "commercial" in nature.
My opinion is based upon several factors. First, I have relied upon the language of the act itself. The act appears to divide builders into two classes: (1) Builders or improvers of residential property consisting of fewer than four units; and (2) Owners and developers of property that has commercial purposes. The specific language that makes this distinction is set forth in the act's amended A.C.A. § 18-44-115(e)(1), which states:
 The General Assembly hereby finds that owners and developers of commercial real estate are generally knowledgeable and sophisticated in construction law, are aware that unpaid suppliers of labor and material are entitled to assert liens against the real estate if unpaid, and know how to protect themselves against the imposition of mechanics' and material suppliers' liens. The General Assembly further finds that consumers who construct or improve residential real estate containing four (4) or fewer units generally do not possess the same level of knowledge and awareness and need to be informed of their rights and responsibilities. Because supplying the notice specified in § 18-44-115(d) imposes a substantial burden on material suppliers, the notice requirement mandated under subsection (c) of this section as a condition precedent to the imposition of a material supplier's lien shall only apply to construction of or improvement to residential real estate containing four (4) or fewer units.
As noted previously, the phrase "commercial real estate," as used in the above-quoted statutory provision, is not defined, nor does the statute specify the types of property that are to be considered "commercial." Residential property consisting of more than four (4) units is generally owned and developed for commercial purposes. The owners and developers of such property are generally comparable to the owners and developers of property that is traditionally considered to be "commercial" in nature. That is, the owners and developers of residential property consisting of more than four (4) units are readily described by the language quoted above describing owners and developers of "commercial real estate." Such owners and developers are generally "knowledgeable and sophisticated in construction law, are aware that unpaid suppliers of labor and material are entitled to assert liens against the real estate if unpaid, and know how to protect themselves against the imposition of mechanics' and material suppliers' liens." I therefore conclude that the phrase "owners and developers of commercial real estate," as used in the above-quoted statute, should be construed to include the owners and developers of residential property consisting of more than four (4) units.
Second, I have relied on the Arkansas Supreme Court's holding in UrreyCeramic Tile Co. v. Mosley, 304 Ark. 711, 805 S.W.2d 54 (1991). In that case, the Court addressed the constitutionality of the former version of A.C.A. § 18-44-115, which required that notice only be given to owners of residential property, and not to commercial property owners who hired licensed contractors. The appellees argued, in favor of the provision's validity, that commercial property owners, contracting with licensed contractors, are more sophisticated and better able to protect their rights. The Court rejected the argument and held the differentiation to be unconstitutional as a violation of commercial property owners' equal protection rights. In so holding, the Court stated:
 First, we are not persuaded that a person hiring a licensed contractor to do commercial or industrial construction needs less protection than a person doing residential construction. Such an argument erroneously assumes that all persons building commercial or industrial facilities are more sophisticated than those involved in residential construction — a presumption that we cannot indulge. Second, while we are aware that licensed contractors are subject to strictures and qualifications that unlicensed contractors are not, . . . we fail to see how those requirements aid property owners in obtaining the notice necessary to protect themselves against potential lien claims against their property.
 Finally, the mere fact that a contractor is licensed and is performing commercial or industrial construction does not remove the property owner's constitutional right to have notice of lien claims so the owner can protect his or her property.
Urrey Ceramic Tile, 304 Ark. at 716.
Both the Court's holding and its unequivocal language, quoted above, clearly indicate that it considers all classes of property owners to be constitutionally entitled to notice of potential lien claims, and that it would consider a provision that failed to provide any class of property owners with such notice to be unconstitutional.
This would be the result of reading Section 7 [A.C.A. § 18-44-115(e)(2)] to exclude owners and developers of residential property consisting of more than four (4) units. Because the previous section, A.C.A. §18-44-115(e)(1), specifies that the notice requirements of A.C.A. §18-44-115(c) (i.e., the more detailed notice) will apply only to the construction of or improvement to residential property consisting of four units or fewer, owners of residential property consisting of more than four units would be provided with no notice if the notice requirement of § 115(e)(2) were held to exclude them.
A well-established principle of statutory construction is that there is a presumption that statutes are constitutional, and that they must, if possible, be construed so as to uphold the validity of all their parts.Omega Tube and Conduit Corp. v. Maples, 312 Ark. 489, 850 S.W.2d 317
(1993); Littleton v. Blanton, 281 Ark. 395, 665 S.W.2d 239 (1984); HeberSprings Sch. Dist. v. West Side Sch. Dist., 269 Ark. 148,599 S.W.2d 371(1980); Davis V. Cox, 268 Ark. 78, 593 S.W.2d 180 (1980).
Act 1298 of 1995 would be unconstitutional if it were read not to provide notice to owners of residential property consisting of more than four units. However, because the act does not state an intent to exclude such property owners from its protection, and because such property owners readily fit the statute's description of owners and developers of "commercial real estate," the statute can be given a constitutional construction, which would be one that reads the provisions of § 115(e)(2) to require that notice of potential liens be given to owners of residential property consisting of more than four units, as well as to owners and developers of other commercial property. It is my opinion, therefore, that the act would be construed by a court in this manner.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] It should be noted that this is, in my opinion, a different date than the date on which the lien will attach for purposes of determining priority among liens. That date is governed by Section 5 of Act 1298 of 1995, which amends A.C.A. § 18-44-110, and provides that for purposes of determining priority, all liens "shall date from the time that the construction or repair first commences." The statute goes on to state: "Construction or repair commences when there is a visible manifestation of activity on real estate that would lead a reasonable person to believe that construction or repair of an improvement to the real estate has begun or will soon begin. . . ." Acts 1995, No. 1298, Section 5 [A.C.A. § 18-44-110(a)(1) and (2)].