RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

GREATER HEIGHTS ACADEMY, et al.,
                        *Plaintiffs-Appellants,*

v.                                                                     No. 06-4162

DR. SUSAN TAVE ZELMAN, et al.,
                        *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00498—Algenon L. Marbley, District Judge.

Argued: March 12, 2008

Decided and Filed: April 18, 2008

Before: KEITH, CLAY, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Albin Bauer II, EASTMAN & SMITH, Toledo, Ohio, for Appellants. Reid T. Caryer, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Albin Bauer II, EASTMAN & SMITH, Toledo, Ohio, for Appellants. Reid T. Caryer, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

### OPINION

_____

DAMON J. KEITH, Circuit Judge. This case arises from a 42 U.S.C. § 1983 Fourteenth Amendment claim filed by two Ohio community schools, Greater Heights Academy and W.C. Cupe Community School ("Appellants"), against three Ohio public officials, Dr. Susan Tave Zelman, Ohio Superintendent of Public Instruction, Dr. Paulo A. DeMaria, Associate Superintendent for the Center for School Finance of the Ohio Department of Education (ODE), and Todd L. Hanes, Director of ODE's Office of Community Schools (collectively, "Appellees"). Appellants sought injunctive relief consisting of a prayer for the receipt of state educational funds pursuant to Ohio Rev. Code § 3314.08 and an opportunity for a hearing prior to the denial of funding. Concluding that community schools are political subdivisions and barred from asserting Fourteenth Amendment claims against state officials, the district court dismissed Appellants' suit under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The sole issue on appeal is whether Appellants are political subdivisions that therefore cannot invoke the protection of the Fourteenth Amendment against the state of Ohio.

I.

Ohio community schools, also known as "charter schools," provide non-traditional public education to students from kindergarten through grade twelve. Chapter 3314 of the Ohio Revised Code sets forth the operation and funding of community schools. All community schools contract with an authorized "sponsor" that provides oversight and support to the school, ensuring that they comply with state requirements. Ohio Rev. Code §§ 3314.02(C)(1), (D); Ohio Admin. Code § 3301-102-05. The sponsor may be either a public educational entity or a 501(c)(3) tax-exempt entity. Ohio Rev. Code §§ 3314.02(C)(1)(a)-(f). Additionally, the sponsorship contract must comply with the criteria of Ohio Revised Code § 3314.03. Sponsors decide whether to place a community school on probation, suspension, or permanently terminate the community school's contract because of non-compliance with state and federal educational requirements. Ohio Rev. Code §§ 3314.07, 3314.072, 3314.073. In turn, sponsors must seek ODE approval for preliminary agreements, according to criteria, procedures, and deadlines established by the ODE. Ohio Rev. Code § 3314.015(B). The ODE, in addition, may revoke approval of a sponsor and assume direct sponsorship of a community school in the event that a sponsor becomes unwilling or unable to complete its duties. Ohio Rev. Code § 3314.015(C).

Ohio community schools are financed solely by state educational funds that are diverted from Ohio school districts and awarded on a per pupil basis. Ohio Rev. Code § 3314.08. Under ODE funding procedures, after community schools submit their enrollment data, traditional school districts are permitted to "flag" certain students who they believe do not actually attend the community school. Traditional public schools and state officials may later remove the error flag. Where error flags remain, the state automatically denies payment for flagged students. Disputes about flagged students may be resolved during the ODE's "reconciliation" period. In this case, the Cleveland Municipal School District and Columbus City School District flagged a number of students on Appellants' lists. As a result, Appellants did not receive payment for those students. They were not provided the opportunity for a hearing prior to the denial of payment.

II.

Appellants contend that the district court erred in finding that Appellees are 'political subdivisions' and therefore unable to invoke the protections of the Fourteenth Amendment. This Court reviews a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) *de novo.* *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1238, 1239-40 (6th Cir. 1993).

It is well established that political subdivisions cannot sue the state of which they are part under the United States Constitution. *City of Trenton v. New Jersey*, 262 U.S. 182, 186-87, 43 S. Ct. 534, 67 L. Ed. 937 (1923) (With respect to political subdivisions, "the state is supreme and its legislative body . . . may do as it will, unrestrained by any provision of the Constitution of the United States."); *City of Newark v. New Jersey*, 262 U.S. 192, 196, 43 S. Ct. 539, 67 L. Ed. 943 (1923) ("The regulation of municipalities is a matter peculiarly within the domain of the state."); *South Macomb Disposal Auth. v. Washington Twp.*, 790 F.2d 500, 505 (6th Cir. 1986) ("The relationship between [political subdivisions] is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply."). An entity is a political subdivision of a state if it is a creation of the state, if its power to act rests entirely within the discretion of the state, and if it can be destroyed at the mere whim of the state, "unrestrained by any provision of the Constitution of the United States." *See City of Trenton*, 262 U.S. at 187; *see also South Macomb Disposal Auth.*, 790 F.2d at 504 ("Being a subdivision of the state, the 'State may withhold, grant or withdraw powers and privileges [from a municipality] as it sees fit.'" (quoting *id.* at 187) (alteration in original)). In determining whether a particular entity is a political subdivision, courts look to statutory and case law. *South*

*Macomb Disposal Auth.*, 790 F.2d at 506; *Delta Special Sch. Dist. No. 5 v. State Bd. of Educ. for Ark.*, 745 F.2d 532, 533 (8th Cir. 1984).

After considering Ohio's statutory and case law, as well as the substantive control that Ohio exerts on its community schools, it is apparent that community schools are political subdivisions of the state. First, Ohio's statutory law establishes community schools as political subdivisions. Section 2744.01(F) of the Ohio Revised Code defines "'[p]olitical subdivision' or 'subdivision' [as] a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. 'Political subdivision' includes, but is not limited to, a . . . *community school* established under Chapter 3314." (emphasis added). As a political subdivision, community schools are immune from liability in civil actions. Ohio Rev. Code § 2744.02(A)(1).

Ohio's collective bargaining statute similarly enumerates community schools as one of Ohio's political subdivisions, stating that "public employer" "means the state or any political subdivision of the state . . . including . . . [the] governing authority of a community school established under Chapter 3314. [sic] of the Revised Code." Ohio Rev. Code § 4117.01(B). In addition to Ohio statutory law, the Ohio Supreme Court has expressly found that community schools are political subdivisions for which the state may assume debt. *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Educ.*, 111 Ohio St. 3d 568, 586, 857 N.E.2d 1148 (2006).

Community schools, moreover, bear many of the characteristics of a political subdivision under the control of the State. Like other political subdivisions, "the State may withhold, grant or withdraw powers and privileges [from a community school] as it sees fit. However great or small its sphere of action, it remains the creature of the State exercising and holding powers and privileges subject to sovereign will." *South Macomb Disposal Auth.*, 790 F.2d at 504 (quoting *City of Trenton*, 262 U.S. at 187) (quotation marks omitted). For instance, community schools were created by state legislation. *See* Ohio Rev. Code Chapter 3314. Section 3314.01(B) of the Ohio Revised Code expressly characterizes community schools as "public school[s], independent of any school district, and part of the state's program of education." Moreover, both community school students and traditional public school students must pass the same proficiency, achievement, and diagnostic tests. Ohio Rev. Code § 3314.03(A). They are also subject to the same facility requirements and health and safety standards. Ohio Rev. Code § 3314.05. Although sponsors are responsible for overseeing compliance with state regulations, Ohio Rev. Code §§ 3314.07, 3314.072, 3314.073, sponsors are under the command of the ODE. The ODE approves and monitors sponsors, and "[i]f a sponsor becomes unwilling or unable to complete its duties, the ODE may revoke approval to act as a sponsor and assume direct sponsorship of the community school in question for up to two years." *State ex rel. Ohio Congress of Parents & Teachers*, 111 Ohio St. 3d at 570; Ohio Rev. Code § 3314.015.

Furthermore, community schools must conform to a variety of general state regulations. They are required to comply with public records laws and the same bookkeeping standards as traditional public schools. Ohio Rev. Code §§ 149.43, 3314.03(A)(8). They must also abide by open meeting laws governing political subdivisions. Ohio Rev. Code §§ 121.22, 3314.03(A)(11). Moreover, community school teachers receive the benefits of the Ohio public retirement system. Ohio Rev. Code § 3307.01. Ohio also raises taxes for the purpose of funding community schools, Ohio Rev. Code § 3314.08, and funds remaining upon a community school's closing are returned to the state's general fund. Ohio Rev. Code § 3314.074(A). Additionally, community schools must be open to all residents with narrow exceptions and must be nonsectarian and non-discriminatory. Ohio Rev. Code §§ 3314.06(A), 3314.03(D)(1).

Given the statutory and case law expressly naming community schools as political subdivisions, as well as the many institutional characteristics of community schools that establish

their position as part and parcel of Ohio's system of public education, the district court did not err in finding that community schools, as political subdivisions, are barred from invoking the protections of the Fourteenth Amendment. Ohio has created community schools "to give parents a choice and give educators 'the opportunity to establish limited experimental educational programs in a deregulated setting.'" *State ex rel. Ohio Congress of Parents & Teachers*, 111 Ohio St. 3d at 576 (quoting 1997 Am. Sub. H.B. No. 215, § 50.52, Subsection 2(B), 147 Ohio Laws, Part I, 2043). In conducting this experiment, however, Ohio has not relinquished its power to create, govern or even destroy community schools. Accordingly, we hold that the relationship between Ohio community schools and traditional public schools "is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply." *South Macomb Disposal Auth.*, 790 F.2d at 505.

III.

For the aforementioned reasons, we AFFIRM the decision of the district court.